UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEQUNNE HERRON,

                     Petitioner,                 Case No. 2:15-cv-13055
                                                                     Hon. Nancy G. Edmunds

v.

TONY TRIERWEILER,[1]

                     Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. DeQunne Herron was convicted in the Oakland Circuit Court after a jury trial of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(f), and assault with intent to do great bodily harm. MICH. COMP. LAWS § 750.84. Petitioner was sentenced as a third-time habitual felony offender to 40-to-80 years' imprisonment for the criminal sexual conduct conviction and 12-to-20 years' imprisonment for the assault conviction.

The petition asserts six grounds for relief: (1) the trial court erroneously instructed the jury on the use of force element of criminal sexual conduct, (2) Petitioner's attorney provided ineffective assistance of counsel at trial, (3) Petitioner's appellate counsel was ineffective for failing to advise Petitioner that the Michigan Court of Appeals affirmed his conviction and for failing to file an appeal in the Michigan Supreme Court, (4) the state circuit court did not have jurisdiction because

---

[1] Petitioner has been transferred to the Bellamy Creek Correctional Facility where Tony Trierweiler is Warden. The proper respondent in a habeas case is the habeas petitioner's custodian. Rule 2(a), 28 U.S.C. § 2254. Accordingly, the Court amends the caption to reflect Petitioner's current custodian.

of an error in the state district court, (5) insufficient evidence was presented at trial to sustain Petitioner's criminal sexual conduct conviction, and (6) Petitioner's appellate counsel was ineffective for failing to raise his post-conviction claims on direct review.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, and it will deny him permission to appeal in forma pauperis.

## I. Background

Chelsea Davidson testified at Petitioner's jury trial that she was in a dating relationship with him at the time of the offense. On the evening of July 8, 2011, Davidson was staying at her parent's home when Petitioner called her at about 3:00 a.m. Petitioner arrived at the house a few minutes later with a woman who was driving his car. Davidson got into the back seat of the car. Petitioner struck her in the stomach, and they drove to his house.

When they arrived at Petitioner's house, Davidson's mother called her cell phone, but Petitioner snatched the phone away and would not let her talk. Petitioner then ordered Davidson to go into the livingroom and take off her clothes. Davidson testified:

> I do as he says. I take off all my clothes, I'm completely naked. I'm sitting on the bed, my knees are up and I'm trying to cover my private parts, so I'm kind of like leaned back on the bed. And he goes, put your knees down and move your arms. So I do as he says and he punches me with a closed fist in my lower stomach. I cover right back up, immediately cover right - move your arms and move your legs he tells me. I do as he says, he punches me again in the same spot, closed fist. I start crying, telling him to stop, stop, why are you hitting me? . . . I was scared. The sound of his voice, there was so much anger. . . . He then takes his two fingers, his middle finger and his index finger and inserts them in my vagina.

Dkt. 11-8, at 55-56.

Petitioner told Davidson that she smelled like sex. Petitioner demanded to know where Davidson had been that day, and she lied and told him that she had been at work. Petitioner replied

2

that he knew that was not true, and he retrieved a hammer and threatened to kill her if she did not tell him the truth.

Petitioner then folded an extension cord in half and whipped Davidson with it over thirty times. Petitioner punched her again, and he spit in her face. Petitioner directed Davidson into another room where he urinated on her. Petitioner told Davidson that he would be starting an escort service that she would have to participate in.

The next morning Petitioner had Davidson dress in clothes that would cover her injuries. One of Davidson's friends, Melissa Morenz, picked her up after Petitioner and another man dropped her off at a gas station. Davidson showed Morenz her injuries, and Morenz drove her to her parents' home. She showed her injuries to her mother, and her parents drove her to the hospital. Davidson told medical providers and a police detective what happened. Her medical records and photographs of her injuries were admitted into evidence at trial.

Davidson also testified about prior incidents when Petitioner beat her. Police responded to the scene after one such incident, but Davidson lied to them about what happened. Davidson went back with Petitioner despite the incidents because she loved him.

Melissa Morenz testified that Davidson was her good friend. Morenz picked her up at a gas station on July 9, 2011. Morenz noticed her bruised eye, and Davidson showed Morenz her other injuries. Davidson told Morenz that Petitioner punched her in the face, hit her multiple times with an extension cord, and urinated on her. On the day of the assault Petitioner was texting Morenz pretending to be Davidson.

Darlene Davidson testified that she was the victim's mother. Earlier that summer, she called her daughter but Petitioner answered her cell phone. Petitioner refused to put Davidson on the phone and threatened her. The next morning, Darlene found an address for Petitioner and she called the

police. Two officers met her at Petitioner's address. Her daughter answered the door and had black and blue marks up and down her neck and a black eye. After that incident Davidson moved back home for a few weeks.

On July 9, 2011, Davidson showed Darlene her injuries. Darlene and her other daughter helped strip-off Davidson's sticky and bloody clothes. According to Darlene, "she looked like somebody that had been in a war and captured." Dkt. 11-8, at 221. Davidson's parents took her to the hospital.

Oakland County Deputy Sheriff John Ousnamer testified that on July 9, 2011, he was dispatched to a hospital in Pontiac where he interviewed Davidson. Ousnamer took photographs of Davidson's injuries located on her face, arms, back, thighs and stomach. Ousnamer recounted Davidson's description of the sexual assault and beating that had occurred the previous night.

Megan Widman testified that she was the Director of Social Action at Haven, a center for the prevention and treatment of domestic violence and sexual assault. Widman was qualified as an expert in the behavior of domestic violence relationships and described the cycle of abuse in such relationships.

Jeanine Jacopec testified she was employed at the Haven Clinic as a sexual assault nurse examiner, and she performed the examination on Davidson. Jacopec testified that Davidson told her she had been digitally penetrated, and her perpetrator told her she smelled like sex and punched her in the face. Davidson also told Jacopec that Petitioner hit her several times with an extension cord, threatened to hit her with a hammer, and urinated on her. Davidson presented with external injuries on her face, back, arms and legs.

Heather Holloway testified as an other-acts witness. She testified that she was in a dating relationship with Petitioner from April of 2010 to February of 2011. Holloway went to Petitioner's

4

home on June 7, 2011, and he tried to go through her phone. He hit her in the face, and he kicked her when she fell to the ground. Holloway went to the hospital after the incident.

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal raised two claims:

> I. Defendant-Appellant was denied his due process rights under the 14th Amendment to the US Constitution to a fair trial by the trial court's failure to correctly instruct the jury.
>
> II. Defendant-Appellant was denied his 6th Amendment right to effective assistance of counsel by trial counsel's failure to investigate, cross-examine the complainant, present a defense, and for giving erroneous legal advice.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Herron*, 2013 WL 4436875 (Mich. Ct. App. Aug. 20, 2013). Petitioner did not file a timely application for leave to appeal in the Michigan Supreme Court. He claims that his appellate counsel failed to inform him that the Michigan Court of Appeals affirmed his convictions and failed to timely seek leave to appeal in the Michigan Supreme Court.

Petitioner attempted to file a pro se application for leave to appeal in the Michigan Supreme Court about two years after the Michigan Court of Appeals issued its decision, but the Michigan Supreme Court rejected the application as untimely. Dkt. 11-12. Petitioner then filed a habeas petition in this Court, seeking to raise the two claims he presented to the Michigan Court of Appeals as well as a third claim that he was denied the effective assistance of appellate counsel.

Petitioner filed a motion in this Court to hold the case in abeyance to allow him to exhaust additional claims in the state courts. Dkt. 8. Respondent filed a motion to dismiss the petition for failure to comply with the one-year statute of limitations. The Court granted Petitioner's and denied Respondent's motion. Dkt. 14. The Court found that genuine issues of material fact existed with respect to Petitioner's claim that he was entitled to equitable tolling. Id. The case was stayed for

5

Petitioner to exhaust his new claims.

Petitioner filed a motion for relief from judgment in the trial court, raising what not form his fourth, fifth, and sixth habeas claims. The trial court issued an opinion denying the motion, finding that Petitioner did not demonstrate good cause to excuse his failure to raise the claims on direct appeal as required by Michigan Court Rule 6.508(D)(3)(a) and (b). Dkt. 26-3, at 2-3.

Petitioner filed an application for leave to appeal that decision in the Michigan Court of Appeals, raising the same claims. The Michigan Court of Appeals denied relief "because defendant failed to establish that the trial court erred in denying his motion for relief from judgment." *People v. Herron*, No. 331194 (Mich. Ct. App. April 28, 2016). Petitioner then sought leave to appeal in the Michigan Supreme Court, but his application was denied under Michigan Court Rule 6.508(D). *People v. Herron*, 888 N.W.2d 72 (Mich. 2016) (Table).

Rather than timely move to reopen this case, Petitioner initiated a new habeas case that raised his six claims, and the two cases were consolidated into the present one. The new petition was dated after expiration of the 60-day deadline outlined in the order holding the case in abeyance, but the Court nevertheless granted Petitioner permission to reopen the case. See Dkt. 22. Respondent filed an answer to the new petition, and the matter is now ready for decision.

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that

6

are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Procedural Defenses

Respondent raises a number of procedural defenses, claiming that Petitioner defaulted his claims in the state courts - either by failing to file a timely application for leave to appeal in the Michigan Supreme Court during his direct appeal, or by failing to raise his post-conviction claims during his direct appeal. Respondent also asserts that Petitioner failed to comply with the conditions of the order holding the case in abeyance, and that Petitioner failed to comply with the one-year

7

statute of limitations. Petitioner responds that his state court defaults were the result of ineffective assistance of counsel on appeal, and that his transfer between correctional facilities caused him to miss the filing deadline imposed by the order holding the case in abeyance. He relatedly asserts that he is entitled to equitable tolling for the statute of limitations.

With respect to the state court defaults, the Court is cognizant of the importance of enforcing state procedural rules. Ignoring procedural default arguments and providing an additional layer of appellate review to claims that have been procedurally defaulted in state court can cause "significant harm" to "the important interest in finality served by state procedural rules," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Nevertheless, it may be more economical for the habeas court to review the merits of potentially defaulted claims, "for example, if [the merits are] easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

In the present case, the Court deems it more efficient to proceed to the merits of Petitioner's claims. Petitioner claims that his appellate counsel was ineffective and that his transfer between prisons caused his state court and federal defaults. Respondent disputes some of the factual predicates to these arguments, especially as to equitable tolling, and the issues presented by these arguments are not easily resolved based on the existing record. On the other hand, Petitioner's claims are completely devoid of merit based on the existing record. Accordingly, the Court will proceed to the merits of Petitioner's claims.

B. Jury Instruction Regarding Use of Force

Petitioner's lead claim asserts that the trial court erroneously instructed the jury regarding the use of force element of first-degree criminal sexual conduct. This claim was conclusively rejected as a matter of state law by the Michigan Court of Appeals during Petitioner's appeal of

right:

> Defendant argues that the following instruction to the jury was improper: "It is enough force if the defendant used force to induce the victim to submit to the sexual act or to seize control of the victim in a manner facilitating commission of the sexual act without regard to the victim's wishes." Defendant claims this instruction was improper because no threats or force were used before the sexual penetration and the victim had not indicated that she did not wish to engage in sexual intercourse.
>
> Force is an element of the charged offense. MICH. COMP. LAWS § 750.520b(1)(f). The Michigan Supreme Court used the language at issue in explaining the requisite force under MICH. COMP. LAWS § 750.520d(1)(b), which incorporates the definition of force from MICH. COMP. LAWS § 750.520b(1)(f). *People v. Carlson*, 466 Mich. 130, 140 (2002). CJI2d 20.24(7) includes that same language as part of the definition of sufficient force and instructs trial courts to provide such definition to the jury when it is applicable. The instruction was supported by the evidence in this case. Before the sexual penetration, defendant snatched the victim's cellular telephone, ordered her into the living room, ordered her to take off her clothing, and punched her twice in the lower stomach. He then penetrated her with his fingers. The jury could have found that these acts constituted force sufficient to induce the victim to submit to the sexual act or to seize control over the victim in a manner facilitating commission of the sexual act. See *Carlson*, 466 Mich. at 140. Thus, this instruction sufficiently protected defendant's rights and did not constitute plain error affecting substantial rights. See *Gratsch*, 299 Mich. App. at 615; *Canales*, 243 Mich. App. at 574.

*Herron*, 2013 WL 4436875, at *2.

"Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012). Federal habeas relief lies for a jury instruction claim only when "the instruction is so flawed as a matter of state law as to 'infect[] the entire trial' in such a way that the conviction violates federal due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

The Michigan Court of Appeals reviewed the propriety of the use of force element instruction and held that, under Michigan law, the trial court was correct in its statement of the law. It is outside the province of a federal court on habeas review to second-guess a state court's

9

interpretation of state law. See *Davis v. Morgan*, 89 F. App'x 932, 936 (6th Cir. 2003). Where a state appellate court has assessed the adequacy of a particular jury instruction under state law, a federal habeas court cannot question that finding. *Id.* at 936-37. It is not for this Court to decide whether the state court instruction constituted a correct statement of the disputed element of the state offense under state law. Therefore, Petitioner is not entitled to habeas relief based on his jury-instruction claim.

C. Effective Assistance of Trial Counsel

Petitioner's second claim asserts that he was denied the effective assistance of counsel at trial. He asserts that his counsel: (1) failed to object to the jury instruction discussed above, (2) incorrectly advised him regarding his sentencing exposure for the criminal sexual conduct charge, (3) failed to move for a mistrial after the jury learned of his former imprisonment, (4) failed to point-out inconsistencies between the victim's testimony and her written statement, and (5) failed to call two defense witnesses. Each of these allegations were reasonably rejected by the Michigan Court of Appeals during Petitioner's appeal of right.

Ineffective assistance of counsel claims are reviewed under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a defendant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense such that the defendant was denied a fair trial. *Id.* at 687. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. On habeas review, the question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

First, Petitioner's claim regarding the failure to object to the jury instruction fails for the simple reason that the instruction was correct. Counsel cannot be deemed ineffective for failing to raise a meritless objection. See *Bradley v. Birkett*, 192 F. App'x. 468, 475 (6th Cir. 2006).

Next, Petitioner asserts that his counsel told him that he only faced a potential sentence of 5-to-14 years' imprisonment for the criminal sexual conduct offense. He asserts that if he had been informed of the true sentencing consequences he likely would have accepted a plea deal. Defendants have a right to effective assistance of counsel during the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To show prejudice in the context of pleas, "a defendant must show the outcome of the plea process would have been different with competent advice." *Id*. Specifically, the petitioner must show that there is a reasonable probability that:

> [1] the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id*. at 164.

The sentencing transcript indicates that there was an effort made at reaching a plea bargain prior to trial, but the negotiations failed because Petitioner was unwilling to accept responsibility for the criminal sexual conduct charge. See Dkt. 11-10, at 9-10. Petitioner himself stated at the sentencing hearing: "As far as [the prosecutor] saying about sexual misconduct and me not taking . . . a plea, I wasn't never going to take a plea to that because I don't feel like I'm guilty of that." Id. at 11-12. This statement was made on the record even after Petitioner was informed of the actual sentencing guideline range. The Michigan Court of Appeals relied on the statement to make a determination that there was not a reasonably probability that Petitioner would have accepted a plea
11

bargain. That conclusion was a reasonable one to make. Petitioner stated that he would *never* have accepted a plea bargain because he was not guilty of sexual misconduct. It was not unreasonable to conclude in light of that statement that Petitioner's current assertion is the false product of 20/20 hindsight. Moreover, despite the topic of a plea bargain being raised at sentencing, Petitioner never complained that he was misadvised as to his sentence exposure, nor did he express surprise at learning the true sentencing range. The allegation is without merit.

Petitioner next asserts that his counsel failed to move for a mistrial after the jury learned of his former imprisonment. The mention of Petitioner's prior incarceration came when the victim's mother testified about her efforts to locate Petitioner. When the comment was made, the trial court immediately instructed the jury to disregard it, and then the prosecutor told the witness not to discuss that topic. See Dkt. 11-8, at 217. Jurors are presumed to follow a court's instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Petitioner has failed to demonstrate why the jury would have been unable to follow the court's instruction to ignore this brief, isolated, and unsolicited mention of Petitioner's prior incarceration. He has therefore failed to demonstrate how he was prejudiced by his counsel's failure to move for a mistrial.

Petitioner argues that his counsel failed to use an inconsistency between the victim's testimony and her written statement to impeach her credibility. In Davidson's written statement she stated that she requested to return home after Petitioner punched her in his car, whereas at trial she testified that she did not think much about Petitioner punching her in the car. Dkt. 11-8, at 53-54. Defense counsel's strategy here is obvious. The prior statement about what happened in the car was more damaging to Petitioner's case on this point than Davidson's testimony. Defense counsel's theory of defense was that Petitioner and the victim where in a romantic relationship, and although he might have treated her harshly on the night in question, the sexual penetration was consensual.

That defense was made stronger by the victim's trial testimony that she did not ask to go home even after being struck in the car. The defense would have been undermined by defense counsel harping on the fact that Davidson previously stated that she told Petitioner she wanted to go home from the time he hit her in the car. In fact, on cross-examination, defense counsel elicited testimony from the victim that she did *not* ask to get out of the car after she was hit. Id. at 120. The claim is without merit.

Finally, Petitioner asserts that his counsel failed to call two defense witnesses - the woman who drove the car when Petitioner picked up the victim at her parents' house, and Dequan Chapman, the man who drove Petitioner and the victim to a store before she was dropped off at the gas station. He claims that these two individuals would have testified to normal interactions between Petitioner and Davidson while they were with them. However, Petitioner failed to present to the state courts, and he fails to proffer to this Court, any affidavits or statements from these individuals regarding their alleged observations. There is simply no record, therefore, on which to conclude that counsel performed deficiently by failing to call these witnesses or that he suffered prejudice as a result. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013)(quoting *Strickland*, 466 U.S. at 689). Moreover, Petitioner may not expand the record in support of this claim here because federal habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Accordingly, all of Petitioner's claims of ineffective assistance of trial counsel are without merit.

D. Effective Assistance of Appellate Counsel

Petitioner's third claim asserts that his appellate counsel was ineffective for failing to inform

him of the Michigan Court of Appeals decision on direct review and for failing to file an application for leave to appeal in the Michigan Supreme Court. Relatedly, Petitioner's sixth claim asserts that his appellate counsel was ineffective for failing to raise his state post-conviction review claims (his fourth and fifth habeas claims) on direct review.

Inasmuch as Petitioner raises these claims as an argument to demonstrate cause to excuse his state court procedural defaults, the argument is moot because the Court addresses and rejects each of Petitioner's claims on the merits in this Opinion. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Moreover, Petitioner did not have a constitutional right to counsel during his discretionary appeal before the state supreme court. See *Ross v. Moffitt*, 417 U.S. 600 (1974). Because Petitioner had no constitutional right to pursue relief in the Michigan Supreme Court through counsel, he cannot claim that his retained appellate counsel was constitutionally ineffective for failing to file the application for leave to appeal with that court. See *Wainwright v. Torna*, 455 U.S. 586, 587-588 (1982); *Harris v. Stegall*, 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001). Petitioner's third and sixth claims are therefore without merit.

E. Jurisdiction of State Circuit Court

Petitioner's fourth claim asserts that there was an error in binding him over for trial in the state circuit court after the preliminary examination in the state district court. The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976); see also *Daniel v. McQuiggin*, 678 F.Supp. 2d 547, 553 (E.D. Mich. 2009). As the Supreme Court long-ago explained, "there is nothing in the clauses of the 14th Amendment guarantying [sic] due process and

equal protection which converts an issue respecting the jurisdiction of a state court under the Constitution and statutes of the state into anything other than a question of state law[.]" *Gasquet v. Lapeyre*, 242 U.S. 367, 369 (1917). This claim raises an issue that is not cognizable.

F. Sufficiency of the Evidence

Petitioner's fifth claim asserts that insufficient evidence was presented at trial to sustain his conviction for criminal sexual conduct. He asserts that Davidson gave different accounts of what happened on the date of the incident before he inserted his fingers into her vagina, and therefore the jury could not find beyond a reasonable doubt that he accomplished the sexual penetration through use of force.

In reviewing the sufficiency of the evidence, however, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court may not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Resolving credibility issues in favor of the prosecution, as *Jackson* directs, sufficient evidence was presented at trial to prove beyond a reasonable doubt that Petitioner forcibly and without consent sexually penetrated the victim's vagina with his fingers. The victim testified to her phone being confiscated, to being ordered to undress, to being punched twice in the stomach after attempting to shield her private areas with her arms and legs, and then finally to submitting to the penetration without consent while crying. See *People v. Carlson*, 466 Mich 130, 140 (2002) ("the prohibited 'force' encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes."). It is quite easy

to see why the jury convicted Petitioner of first-degree criminal sexual conduct, and it quite telling that Petitioner believes the evidence presented to be insufficient to demonstrate use of force. This claim is completely devoid of merit.

As all of Petitioner's claim are without merit the petition will be denied.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of his claims. The Court will therefore deny a certificate of appealability with respect all of Petitioner's claims.

If Petitioner chooses to appeal the Court's decision he may not proceed in forma pauperis because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: 10-30-18

/s/ Nancy Edmunds
Hon. Nancy G. Edmunds
United States District Judge

16